FILED

OCT 13 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP Nos.   CC-11-1034-KiPaD |
| | ) | CC-11-1035-KiPaD |
| PAUL C. SUMPTER, | ) | (related appeals) |
| | ) | |
| Debtor. | ) | Bk. No.   SV 09-18223-GM |
| _____ | ) | |
| | ) | Adv. No.   SV 09-1253-GM |
| PAUL C. SUMPTER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| TRUDY HARRISON NICHOLAS, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on September 23, 2011
at Pasadena, California

Filed - October 13, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Geraldine Mund, Bankruptcy Judge, Presiding

_____

Appearances:   James T. Studer argued for appellant Paul Sumpter;
no appearance by appellee Trudy Harrison Nicholas.

_____

Before: KIRSCHER, PAPPAS, and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellee, Trudy Harrison Nicholas ("Nicholas"), has attempted to collect on a judgment against appellant, chapter 7[2] debtor Paul C. Sumpter ("Sumpter"), for nearly ten years. Sumpter has engaged in delay tactics and frivolous litigation. The bankruptcy court and this Panel have rejected Sumpter's requests for stay pending appeal.

In these related appeals, Sumpter appeals four orders from the bankruptcy court. In appeal no. CC-11-1034, Sumpter appeals the order granting Nicholas's motion to abstain and/or dismiss his first amended adversary complaint with prejudice pursuant to FRCP 12(b)(6)("Dismissal Order"), and the subsequent order denying his motion(s) to reconsider the Dismissal Order. In appeal no. CC-11-1035, Sumpter appeals the order overruling his objection to Nicholas's proof of claim ("Claim Order"), and the subsequent order denying Sumpter's third motion to reconsider the Claim Order. We AFFIRM.[3]

We also GRANT Nicholas's motion for sanctions against both Sumpter and his attorney, James Studer ("Studer"), for fees of $21,280 and single costs, as these appeals are frivolous and wholly without merit.

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "FRCP."

[3] Because Sumpter failed to recite an accurate factual background of this case in his appeal briefs or include several pertinent documents in his excerpts of record, we had to review various filings on the bankruptcy court's electronic docket. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003)(Panel may take judicial notice of the bankruptcy records).

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.   Prepetition Events.**

In 1997, Sumpter's grandmother, LaVerne Sumpter ("LaVerne"), executed quitclaim deeds transferring four parcels of property (the "Property") owned by LaVerne to the LaVerne Sumpter Living Trust Dated 7-19-97 (the "Trust").[4]  The quitclaim deeds were recorded with the Ventura County Recorder's Office on July 30, 1997.  The Property, located in Simi Valley, California, contains three structural improvements.  Sumpter has resided in the main dwelling on the Property since 1985.

LaVerne died on January 4, 1998.  Sumpter appears to be LaVerne's only surviving heir.  He is also the successor trustee of her Trust.  The Property is the only asset of the Trust, and Sumpter is the Trust's sole beneficiary.  After LaVerne's death, Sumpter began renting out the two other dwellings on the Property for his support.  Sumpter and Nicholas entered into a written lease for a room in one of the dwellings in February 2000.  On February 2, 2001, Nicholas was injured in a common area on the Property.  On or about February 14, 2001, counsel for Nicholas sent a letter to Sumpter, as manager of the Trust, informing him of Nicholas's injury and requesting that Sumpter turn the letter over to his insurance carrier.  In the event no insurance existed, counsel stated that Nicholas would proceed with a lawsuit.  No evidence suggests that Sumpter responded to counsel's letter.

---

[4] Sumpter claims that documents evidencing the Trust existed at one time, but alleges that a former tenant stole them.  No Trust documents were ever presented to the state courts or bankruptcy court.

- 3 -

**1.  The 2002 default judgment and judgment lien.**

On September 4, 2001, Nicholas sued Sumpter, individually, and as trustee of the Trust, in the Ventura Superior Court ("Civil Court") for her personal injuries and for reimbursement of monies she spent repairing the Property.  Sumpter has denied ever being served with the summons and complaint.  Sumpter did not file an answer.  After a prove-up hearing on September 23, 2002, the Civil Court entered a default judgment against Sumpter individually, and as trustee of the Trust, in the amount of $297,333.76 ("2002 Default Judgment").  An abstract of that judgment was recorded on October 31, 2002, which became a secured lien against the Property ("Judgment Lien").

**2.  The 2006 enforcement order.**

In August 2006, Nicholas petitioned the Ventura probate court ("Probate Court") to force administration of LaVerne's Trust (which Sumpter had never administered) in order to have the Property sold and the proceeds used to satisfy her judgment.  By this time, the judgment with interest was in excess of $400,000. In her petition, Nicholas asserted that Sumpter had: (1) failed to ever administer LaVerne's Trust; (2) failed to pay taxes on the Property since 2000, which now subjected it to a pending tax sale; (3) allowed the insurance on the Property to lapse; (4) allowed trash and debris to accumulate on the Property; and (5) allowed the Property to fall into such a state of disrepair that it had to be condemned.[5]  The Probate Court held a hearing

---

[5] On July 3, 2001, Ventura County condemned two of the three dwellings on the Property due to their uninhabitable condition and issued a Notice and Order to Vacate the Premises.

on the matter on September 28, 2006. Sumpter appeared. He alleged that he had never been served with the summons and complaint from Nicholas's suit in 2001, but admitted that he learned about it by notice from the tax assessor's office regarding the Judgment Lien filed in 2002. Sumpter also confirmed that the Trust, not he, held title to the Property. In response to Sumpter's service allegations, Nicholas directed the court to her exhibits containing the proof of service for the summons and complaint, the proof of service for the default entry, and the proof of service for the Judgment Lien. On October 26, 2006, the Probate Court entered an order appointing a receiver to sell the Property and pay Nicholas the sum of her judgment from the proceeds (the "2006 Enforcement Order"). Notably, the 2006 Enforcement Order specifically determined that the Trust owned the Property. Sumpter did not appeal that order.

### 3.    The 2009 transfer order.

After unsuccessful attempts to sell the Property for nearly three years, the receiver filed an ex parte request in the Probate Court to transfer the Property to Nicholas in satisfaction of her judgment. According to the request, counsel for Nicholas had advanced $13,588.82 to prevent the Property from escheating to the state for delinquent property taxes. On June 3, 2009, the Probate Court entered an order authorizing the receiver to transfer the Property to Nicholas and ordering Sumpter to vacate the premises (the "2009 Transfer Order"). If Sumpter failed to vacate, Nicholas could obtain an order for possession. Before the transfer occurred, Sumpter filed a chapter 11 petition for relief on July 2, 2009, thereby staying

the order. Sumpter's bankruptcy filing also stayed a July 8, 2009 hearing he had requested in Civil Court to vacate the 2002 Default Judgment.

**B.   Postpetition Events.**

In his Schedule A, Sumpter claimed a "beneficial or equitable interest" in the Property, which he valued at $600,000. Sumpter also claimed a $50,000 homestead exemption in his Schedule C.

On July 6, 2009, Sumpter filed an ex parte motion requesting that the bankruptcy court: (1) vacate the 2009 Transfer Order; (2) vacate the 2002 Default Judgment; and (3) determine whether Sumpter was entitled to a homestead exemption under California law. In short, Sumpter contended that the 2009 Transfer Order was invalid because the Probate Court failed to determine first whether the dwelling was exempt before issuing the order, and because such transfer to Nicholas was a preference. Sumpter further contended that the 2002 Default Judgment was void due to lack of service of the summons and complaint.

The bankruptcy court held a hearing on Sumpter's ex parte motion on July 16, 2009. Sumpter and Studer failed to appear. In an order entered that same day, the bankruptcy court denied Sumpter's ex parte motion, concluding that he was attempting to contest the validity of state court orders and such issues should be decided by the state court. The court viewed Sumpter's motion as "a clear attempt to use the bankruptcy court to appeal a state court judgment, which [was] a violation of the Rooker-Feldman doctrine." An order denying the ex parte motion was entered on July 20, 2009. Sumpter filed at least two motions for

reconsideration.

Meanwhile, on July 14, 2009, Sumpter filed an adversary complaint against Nicholas seeking essentially the same relief requested in his ex parte motion. The complaint consisted of four pages asserting six claims for relief. Nicholas moved to dismiss Sumpter's complaint under FRCP 12(b)(1), contending that the bankruptcy court lacked jurisdiction to nullify final state court orders per Rooker-Feldman or, alternatively, that it should exercise mandatory or discretionary abstention over these non-core issues. Despite his pending complaint, Sumpter filed another motion in the main case on July 31, 2009, seeking essentially the same relief he had already sought in his denied ex parte motion, and the same relief he was seeking in the adversary complaint. Just days later, on August 3, 2009, Sumpter filed yet another motion seeking to avoid the Judgment Lien,[6] contending that it impaired his claimed $50,000 homestead exemption.

After a flurry of further filed papers from Sumpter, on August 25, 2009, the bankruptcy court issued an Order to Show Cause ("OSC") to either dismiss Sumpter's case or appoint a trustee, and to continue all pending motions in the main case and adversary proceeding to September 22.[7] At the September 22

---

[6] Subject to certain exceptions not present in this case, under § 522(f)(1)(A) a debtor may avoid the fixing of a judicial lien on an interest of the debtor in exempt property to the extent that the lien impairs the exemption to which the debtor would have been entitled.

[7] In the OSC, the court reasoned that Sumpter, absent a trust document, had not shown a legitimate ownership interest in the Property or the ability to operate in a successful manner, and thus no reasonable likelihood of reorganization existed.

hearing, the bankruptcy court denied Sumpter's motions to reconsider the denial of his ex parte motion as state court was the proper forum for Sumpter to assert his claims. The court also dismissed Sumpter's complaint and directed Sumpter to proceed with his matters (vacating the 2002 Default Judgment and the 2009 Transfer Order) in state court. Specifically, the court advised Sumpter to open a probate case to let the Probate Court decide who held title to the Property. Once that issue was resolved, and if the Probate Court determined Sumpter owned the Property as LaVerne's heir, then the bankruptcy court would entertain Sumpter's claimed homestead exemption and his motion to avoid the Judgment Lien. The court continued the OSC to October 6, 2009. An order dismissing Sumpter's complaint was entered on October 16, 2009.

On September 25, 2009, Nicholas moved for relief from stay to proceed in the Civil Court with Sumpter's pending motion to vacate the 2002 Default Judgment and his motion to vacate and/or reconsider the 2009 Transfer Order, and to authorize Sumpter to initiate an administrative proceeding on behalf of LaVerne's estate in the Probate Court to establish his and his bankruptcy estate's interest in the Property. The bankruptcy court heard the stay relief motion on October 6, 2009, and entered an order granting all relief requested on November 25, 2009 ("Stay Relief Order").[8]

_____

[8] Sumpter had already petitioned the Probate Court to administer LaVerne's estate on October 2, 2009. In that petition, he valued the Property at $450,000. Upon entry of the stay relief order, Sumpter filed a first amended petition to administer the estate on November 25, 2009. Sumpter did not file a petition to determine his or his bankruptcy estate's ownership interest in the Property ("850 Petition") until June 2010.

On October 30, 2009, Sumpter filed a First Amended Complaint ("FAC"), seeking to: (1) avoid the 2009 Transfer Order as a preference under § 547; (2) avoid the 2009 Transfer Order under § 544; (3) avoid the Judgment Lien under § 544; (4) determine the Property's value on the date of the 2009 Transfer Order; and (5) avoid the Judgment Lien under § 522(f)(1)(A) because it impaired his $50,000 homestead exemption under § 522(b). Nicholas moved to dismiss Sumpter's FAC under FRCP 12(b)(6) because his claims were either premature and/or moot. Alternatively, Nicholas requested that the bankruptcy court abstain from deciding these issues, as they could be better decided in the ongoing state court proceedings. Sumpter opposed the motion.

On November 3, 2009, Nicholas filed a proof of claim for her Judgment Lien. With interest, her claim against Sumpter was now approximately $500,000. Sumpter objected to Nicholas's claim, contending the Judgment Lien was avoidable under § 544, and that the 2002 Default Judgment was not enforceable because Sumpter was never served with the summons and complaint.

A joint hearing on Nicholas's motion to dismiss the FAC and Sumpter's claim objection was held on January 26, 2010. The bankruptcy court granted Nicholas's motion on Sumpter's first claim for relief (that the 2009 Transfer Order was an avoidable preference under § 547), but denied the motion on all other counts. It further determined that Sumpter's claim objection was premature because the Probate Court was determining ownership of the Property and, therefore, depending on that outcome, his objection might be moot. As such, both matters were continued to

May 25, 2010.

In the meantime, Sumpter and Nicholas appeared at a hearing in the Civil Court on February 11, 2010, on Sumpter's motion to vacate the 2002 Default Judgment and his motion to vacate and/or reconsider the 2009 Transfer Order. Minute orders on both motions were issued that same day. The Civil Court denied Sumpter's motion to vacate the 2002 Default Judgment due to his failure "to act in diligent fashion to request relief after he learned of the default judgment in September 2006, at the latest." It also denied Sumpter's request for an evidentiary hearing on the service issue. "Even accepting all Defendant's assertions as true to conclude there was no personal service of the summons and complaint . . . Defendant was not diligent in his attempt to seek relief."

The Civil Court further denied Sumpter's motion to vacate and/or reconsider the 2009 Transfer Order because his argument of mistake failed to assert any "new or different facts, circumstances or law." It rejected Sumpter's argument that the 2009 Transfer Order could not have been entered without first determining Sumpter's homestead exemption under state law because he had not made a showing that the order should be reconsidered; Sumpter had failed to raise the homestead exemption issue in 2006 and 2009.

Two days later, on February 13, 2010, Sumpter filed an ex parte motion in the bankruptcy court to modify the Stay Relief Order. Sumpter sought review of the issues he believed the Civil Court failed to reach: (1) the lack of service of the summons and complaint in 2001; and (2) the status of his homestead exemption.

The bankruptcy court denied the motion to modify, without prejudice, noting that whether or not Sumpter had ever claimed a homestead exemption under state law in 2006 or 2009 had nothing to do with whether he was entitled to one under the Bankruptcy Code. Until the Probate Court determined whether the Trust or Sumpter owned the Property, that issue did not have to be decided. The court again warned Studer to stop filing motions asking the bankruptcy court to set aside state court rulings.

The continued hearing on the motion to dismiss the FAC and the claim objection took place on May 25, 2010. Studer informed the bankruptcy court that Sumpter had appealed the Civil Court's minute orders from February 11, 2010. As a result, the court opted to suspend any rulings until after the appeals were resolved. Nonetheless, Studer continued to argue the merits of the Civil Court appeals. Counsel for Nicholas then noted that the Property was now worth between $140,000 to $300,000. Upon that information, the bankruptcy court observed that even if Sumpter owned the Property, the real fight here was simply whether he would get a $50,000 homestead exemption because Nicholas's Judgment Lien far exceeded the Property's value. Both matters were continued to June 8, 2010, and continued again until October 13, 2010.[9]

On July 14, 2010, the California Court of Appeal issued its

---

[9] At the June 8 hearing, the bankruptcy court granted the U.S. Trustee's motion to convert Sumpter's case to chapter 7, which had been filed on February 1, 2010. The conversion order was entered on June 18, 2010. The motion to dismiss and claim objection were again continued to October 13, 2010, due to Sumpter's pending appeal of the Civil Court's orders and the pending determination of ownership of the Property in the Probate Court.

decisions on Sumpter's appeal of the Civil Court's orders. On vacating the 2002 Default Judgment, the court dismissed the appeal for lack of jurisdiction due to its untimeliness. In addition, the court noted that the appeal lacked merit because proof of service of the summons and complaint appeared valid on its face. The court found the appeal to be frivolous because Sumpter had admitted receiving independent notice of the 2002 Default Judgment in October 2002 when the assessor's office mailed him notice of the Judgment Lien recording, yet he failed to seek relief from the default until 2009.

The appellate court also dismissed Sumpter's appeal of the 2009 Transfer Order as untimely, concluding that Sumpter's notice of appeal (filed in March 2010) was untimely from the Probate Court's order of June 3, 2009. It also determined that the Civil Court's order denying the motion to vacate and/or reconsider the 2009 Transfer Order was not an appealable order. Nonetheless, on the merits, the court found the appeal frivolous. It rejected Sumpter's argument that the 2009 Transfer Order was void because the court had failed to first determine Sumpter's homestead exemption; Sumpter was not entitled to an exemption because the Trust owned the Property, not Sumpter.

The continued hearing on Nicholas's motion to dismiss the FAC and Sumpter's claim objection went forward on October 13, 2010. Based on the outcome of the state court actions, the bankruptcy court's tentative ruling indicated overruling Sumpter's claim objection and dismissing the FAC with prejudice, subject to any objection by the chapter 7 trustee. See Ten. Ruling Oct. 13, 2010. At the hearing, Studer informed the

bankruptcy court that on September 22, 2010, the Probate Court entered a minute order denying Sumpter's 850 Petition to determine ownership of the Property because the 2006 Enforcement Order had ruled that it was owned by the Trust. The order also stated that Sumpter had failed to vacate the 2002 Default Judgment entered against the Trust in a timely fashion. Sumpter's petition for a writ of mandate regarding that decision was now pending.[10]

After hearing argument from the parties, the bankruptcy court ruled that, as to the motion to dismiss the FAC, the 2002 Default Judgment was valid according to the Civil Court and California Court of Appeal. Therefore, in the court's opinion, the only remaining issue was whether Sumpter had ever obtained an ownership interest in the Property and, if he had, when. Such information was pertinent to whether or not Sumpter could claim a homestead exemption under the Bankruptcy Code. However, the Probate Court was going to rule on that issue, and, possibly, in a joint hearing with the bankruptcy court. Sumpter was ordered to file the required petition in the Probate Court, and all matters were continued to October 21, 2010.[11]

---

[10] According to Nicholas's motion for sanctions, Sumpter's writ was denied. According to the Probate Court's order from December 22, 2010, a writ of possession was issued in favor of Nicholas on September 22, 2010.

[11] A hearing was held on October 21, 2010, but, because the former Probate Court judge had been reassigned to another court, the bankruptcy court opted to continue all pending matters to November 19, 2010, to allow the new judge time to become familiar with Sumpter's case. Based on the bankruptcy court's tentative ruling dated November 19, 2010, it appears that no hearing took place on that date, and the hearing on the motion to dismiss and claim objection was continued again to December 22, 2010.

A joint hearing with the bankruptcy court and Probate Court on the motion to dismiss the FAC and the claim objection took place on December 22, 2010. The Probate Court denied Sumpter's petition for beneficial ownership as res judicata or, at minimum, law of the case, because the California Court of Appeal had already determined as a matter of law the Property belonged to LaVerne's Trust, and therefore Sumpter was unable to claim a beneficial interest in it. Based on that decision, the bankruptcy court in turn: (1) overruled Sumpter's objection to Nicholas's claim objection; (2) granted Nicholas's motion to dismiss Sumpter's FAC, which ultimately denied Sumpter's lien avoidance claim and his homestead exemption; and (3) determined that no stay prevented Nicholas from executing on her judgment. The bankruptcy court denied Sumpter's oral motion for stay pending appeal.

The Claim Order and Dismissal Order were entered on January 13, 2011. Sumpter filed three motions to reconsider the Claim Order by January 17, all of which were denied. The court entered an order denying Sumpter's third ex parte motion to reconsider the Claim Order on January 21, 2010. In that order, the court stated that if Studer filed another motion to reconsider the original order or to reconsider the denial of multiple motions to reconsider, it might: (1) report Studer to the Bankruptcy Court Disciplinary Committee; (2) report Studer to the State Bar of California; and/or (3) issue an order barring Studer from being employed in any bankruptcy case pending before it. Sumpter also filed an ex parte motion to reconsider the Dismissal Order. The court entered an order denying that motion

- 14 -

for lack of merit on January 14, 2011. Sumpter timely appealed all four orders on January 21, 2011. Nicholas has separately moved for sanctions against Studer and Sumpter under Rule 8020.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (K). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err when it dismissed the FAC?

2. Did the bankruptcy court err when it overruled Sumpter's claim objection?

3. Did the bankruptcy court abuse its discretion in denying Sumpter's motions for reconsideration on both the Claim Order and the Dismissal Order?

## IV. STANDARDS OF REVIEW

A grant of summary judgment is reviewed de novo.[12]

---

[12] Although Nicholas moved to dismiss the FAC under FRCP 12(b)(6), the bankruptcy court relied on subsequent rulings by the state court and court of appeal (and perhaps some documents outside the pleadings) for its decision. In general, the court may not consider materials other than the facts alleged in the complaint when ruling on a motion to dismiss under FRCP 12(b)(6). Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). Under FRCP 12(d), applicable in this proceeding through Rule 7012(b), if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, "matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss." Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach (In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.), 102 F.3d 1524, 1537 (9th Cir. 1996)(collecting cases), rev'd on other grounds, 523 U.S. 26 (1998). Therefore, if the bankruptcy court considered only state court orders, we could review the matter as one under FRCP 12(b)(6).

However, with the extensive record in this case and

(continued...)

- 15 -

Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001)(en banc). Appellate review is governed by the same standards of FRCP 56(c) that governed the trial court. Suzuki Motor Corp. v. Consumers Union of U.S., Inc., 330 F.3d 1110, 1131 (9th Cir. 2003). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law. Devereaux, 263 F.3d at 1074.

We review rulings regarding issue preclusion de novo as mixed questions of law and fact in which the legal questions predominate. Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.), 283 B.R. 549, 554 (9th Cir. BAP 2002); Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir. 1988). Once it is determined that preclusion doctrines are available to be applied, the actual decision to apply them is left to the trial court's discretion. Robi, 838 F.2d at 321.

A bankruptcy court's decision to abstain is reviewed for abuse of discretion.[13] Transcorp/Wilbur S. Avant, Jr. M.D. Rollover I.R.A. v. Pioneer Liquidating Corp. (In re Consol.

---

[12](...continued)
Sumpter's incomplete appendix, we are unable to determine exactly what the bankruptcy court may have reviewed. Accordingly, we will err on the side of caution and review the matter as one for summary judgment under FRCP 56. Notably, review under FRCP 12(b)(6) would not change the outcome.

[13] Statutory prohibition on review of a bankruptcy court's permissive abstention decision applies only to appeals to the United States Courts of Appeals under 28 U.S.C. §§ 158(d), 1291, and 1292, or to the United States Supreme Court under 28 U.S.C. § 1254. The statute does not prohibit district courts or bankruptcy appellate panels from hearing and deciding appeals from abstention decisions under 28 U.S.C. § 158(a) and (c).

Pioneer Mortg. Entities), 205 B.R. 422, 424 (9th Cir. BAP 1997). We also review the bankruptcy court's decision to deny a motion for reconsideration for an abuse of discretion. Arrow Elecs., Inc. v. Justus (In re Kaypro), 218 F.3d 1070, 1073 (9th Cir. 2000). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

## V. DISCUSSION

As near as we can decipher, Sumpter contends the bankruptcy court erred in dismissing his FAC without deciding: (1) whether he had a beneficial interest in the Property when the state court "failed" to do so; and (2) whether he was entitled to a homestead exemption under the Bankruptcy Code. Sumpter assigns further error by the bankruptcy court in overruling his claim objection without first determining whether he had been served with the summons and complaint in 2001. In short, Sumpter contends the bankruptcy court erroneously assumed that it had no jurisdiction to decide his ownership interest in the Property, which he asserts is a core matter.

We reject Sumpter's arguments. Whether or not core matters were at issue, the bankruptcy court was free to abstain from determining Sumpter's interest in the Property. Once the state courts determined that Sumpter had no such interest, the

bankruptcy court properly dismissed Sumpter's lien avoidance claim and correctly determined that he was not entitled to a homestead exemption under the Code.  Further, since Sumpter and his bankruptcy estate had no interest in the Property, it follows that his claim objection was moot, and thus the bankruptcy court properly overruled it.

**A.    The bankruptcy court did not err when it dismissed the FAC or when it overruled Sumpter's claim objection.**

**1.    Jurisdiction and core vs. non-core matters.**

Minus a few exceptions not at issue here, 28 U.S.C. § 1334(b) provides bankruptcy courts with "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Title 28 U.S.C. § 157(b)(1) further provides that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" that are referred to it by the district court.

"Core" matters are those "arising under" Title 11 or "arising in" a case under Title 11.  28 U.S.C. § 157(b)(1).  A non-exhaustive list of "core" proceedings is set forth in 28 U.S.C. § 157(b)(2)(A)-(P).  Battle Ground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124, 1131 (9th Cir. 2010).  The proceedings listed include matters affecting the administration of the estate, and determination of the validity, extent, or priority of liens.  "A proceeding 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a [claim for relief] created or determined by a statutory provision of the Bankruptcy

- 18 -

Code." Id. "A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose [claim for relief] is not expressly rooted in the Bankruptcy Code." Id.

"Non-core" matters are those proceedings "related to" cases under the Bankruptcy Code. Non-core matters do not depend on the Bankruptcy Code for their existence, and they could proceed in another court. Id.

Sumpter's claims for relief for lien avoidance and a homestead exemption, as well as his claim objection, are statutorily defined "core" proceedings enumerated in 28 U.S.C. § 157(b)(2)(B) and (K), and involve substantive rights created under bankruptcy law. Sumpter's claims for relief in the FAC and his claim objection essentially turned on whether he and his bankruptcy estate had any interest in the Property. Although not specifically enumerated in 28 U.S.C. § 157(b), whether the Property was property of the estate clearly falls under § 541(a), and is therefore a "core" matter. See John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid), 917 F.2d 1162, 1165 (9th Cir. 1990)(nature and extent of property of the estate concerns the administration of the estate and is a core proceeding under 28 U.S.C. § 157(b)(2)(A)). Nonetheless, the extent of Sumpter's interest in the Property is a matter of California probate law that could (and should) be heard in the Probate Court. See In re Ray, 624 F.3d at 1130 (a matter may still be "core" even if state law affects the outcome). Whether core or non-core, nothing

- 19 -

prevented the bankruptcy court from abstaining and allowing the state courts to determine Sumpter's interest in the Property.

**2. Permissive abstention.**

Two types of abstention exist under 28 U.S.C. § 1334(c): mandatory and permissive.[14] Permissive abstention is a matter within the sound discretion of the bankruptcy court, and a federal court may voluntarily abstain from hearing a particular proceeding on core or non-core matters "in the interest of justice, or in the interest of comity with State courts or respect for State law . . . ." 28 U.S.C. § 1334(c)(1);[15] <u>Gober v. Terra + Corp. (In re Gober)</u>, 100 F.3d 1195, 1206 (5th Cir. 1996).

The Ninth Circuit has set forth several factors that bankruptcy courts employ in evaluating whether permissive abstention is proper:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main

---

[14] The bankruptcy court never articulated whether it applied mandatory or permissive abstention. We conclude that mandatory abstention under 28 U.S.C. § 1334(c)(2) could not apply here because it applies only to "related to" proceedings. <u>Sec. Farms v. Int'l Bhd. of Teamsters</u>, 124 F.3d 999, 1009 (9th Cir. 1997).

[15] 28 U.S.C. § 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1167 (9th Cir. 1990). The merits of Sumpter's bankruptcy claims for relief and his claim objection essentially turned on whether he had any interest in the Property, which was subject to California probate law. The bankruptcy court expressed, on many occasions, that the question of Sumpter's interest in the Property was better reserved for the Probate Court. Probate law, just like bankruptcy law, is a specialized area of practice in which special courts have developed substantial expertise, and as such are entitled to deference in litigation involving those issues. In re DiMartino, 144 B.R. 225, 226 (Bankr. D. R.I. 1992). At the time Sumpter filed his bankruptcy petition, his motion to vacate the 2002 Default Judgment was pending in the Civil Court. There, he was challenging service of the summons and complaint and the Judgment Lien. Furthermore, although Sumpter's claims in bankruptcy were "core" matters, the substance of those claims turned entirely on state law. It was feasible for the bankruptcy court to suspend ruling on Sumpter's bankruptcy claims to allow the state courts to enter judgments regarding his property interest and enforce those judgments in its rulings. Finally, in light of statements

made by Studer at hearings before the bankruptcy court,[16] and the timing of Sumpter's bankruptcy filing when the Civil Court was about to rule on his motion to vacate the 2002 Default Judgment, Sumpter was forum shopping when he filed his first ex parte motion and adversary complaint seeking virtually the same relief. He was clearly seeking a different result from the bankruptcy court. Sumpter still seems to think that had the bankruptcy court not abstained, he would have received a more favorable ruling.

Based on the above factors, we conclude that the bankruptcy court did not err in abstaining from determining Sumpter's interest in the Property.

**3.    The preclusive effect of the state court rulings.**

Issue preclusion provides that once an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Ashe v. Swenson, 397 U.S. 436, 443 (1970). It

---

[16] At the hearing before the bankruptcy court on September 22, 2009, Studer stated: "You're sending us back to the forum where the guy comes in pro per, when they've done nothing for four years, and says he wasn't served, and the judge tells him, 'Oh, it's too late to be raising that. The property's ordered sold.'" Hr'g Tr. (Sept. 22, 2009) 55:14-18. To that, the bankruptcy court responded: "Well, that -- you know, this -- that's called forum shopping." Id. at 55:19-20.

At another bankruptcy court hearing on March 16, 2010, Studer stated: "And I make an 850 petition in front of [the Probate Court judge] and I ask him to determine that the property he's ordered transferred to the judgment creditor is property of the decedent's estate, and he says, 'I've already done that. I've already transferred that.' What then?" Hr'g Tr. (Mar. 16, 2010) 7:8-13.

Finally, at the bankruptcy court hearing on October 13, 2010, Studer stated: "The problem is, your Honor, is that the wheels in motion in the state court are oriented toward enforcing this judgment." Hr'g Tr. (Oct. 13, 2010) 20:20-22.

is "intended to avoid inconsistent judgments and the related misadventures associated with giving a party a second bite at the apple." Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 104 (9th Cir. BAP 2007).

When determining the effect of a state court judgment, we must apply, as a matter of full faith and credit, the state's law of issue preclusion. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). Under California law, the application of issue preclusion requires that the following elements be met: (1) the issue sought to be precluded must be identical to that decided in the former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom issue preclusion is sought must be the same as, or in privity with, the party to the former proceeding. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001)(citations omitted). The party asserting issue preclusion has the burden of establishing these requirements. Id.

In the 2006 Enforcement Order, the Probate Court determined that the Trust owned the Property. Sumpter did not appeal that order. In February 2010, the Civil Court determined on Sumpter's motion to vacate the 2002 Default Judgment that even if Sumpter had never been served with the summons and complaint, relief was not warranted because he had learned of the default judgment by 2006, at the latest, yet he still waited until 2009 to request relief. The Civil Court also denied relief on Sumpter's motion

- 23 -

to vacate and/or reconsider the 2009 Transfer Order, ruling that Sumpter could have raised the homestead exemption issue in 2006 and 2009, yet he failed to do so.

In his appeal of the two Civil Court orders, the California Court of Appeal dismissed the appeal of Sumpter's motion to vacate the 2002 Default Judgment as untimely, but it determined that proof of service of the summons and complaint appeared valid on its face. It also determined that Sumpter's appeal of the service issue was frivolous because he had admitted receiving independent notice of the default judgment from the assessor's office when the Judgment Lien was recorded in October 2002, yet he failed to seek relief from the default until 2009. The appellate court also dismissed Sumpter's appeal of the 2009 Transfer Order for untimeliness but, nonetheless, determined on the merits that the appeal was frivolous. That order was not void, as Sumpter contended, because the Civil Court failed to first determine Sumpter's homestead exemption; Sumpter was not entitled to an exemption because he did not own the Property. Sumpter did not appeal those orders to the California Supreme Court.

A subsequent order from the Probate Court on September 22, 2010, rejected Sumpter's 850 Petition determining that ownership of the Property had already been decided in the 2006 Enforcement Order; the Trust owned the Property, not Sumpter. Finally, the Probate Court's order from December 22, 2010, denied Sumpter's petition for beneficial ownership in the Property as res judicata or, at minimum, law of the case, because the California Court of Appeal had already determined that the Trust owned the Property,

- 24 -

and therefore Sumpter was unable to claim a beneficial interest in it. Sumpter did not appeal that order.

In these state court rulings, the issues of service, the validity of the Judgment Lien, and Sumpter's ownership interest in the Property, which were at the heart of Sumpter's lien avoidance and homestead exemption claims, as well as his claim objection, had been actually litigated, necessarily decided, were final on the merits, and the parties were the same. Accordingly, the bankruptcy court correctly recognized that it was precluded from determining whether Sumpter was served with the summons and complaint, whether the Judgement Lien was valid, and whether he owned or had some beneficial interest in the Property. In re Harmon, 250 F.3d at 1245.

### 4. Disposition of the issues.

Because the state courts had determined that Sumpter had no beneficial interest in the Property, his bankruptcy claims for lien avoidance and a homestead exemption had to fail. This determination also rendered his claim objection moot. Since no genuine issues of material fact were in dispute, the bankruptcy court did not err when it granted summary judgment dismissing Sumpter's FAC. It also did not err in overruling Sumpter's claim objection.

**B. The bankruptcy court did not abuse its discretion when it denied Sumpter's motions for reconsideration of the Claim Order and the Dismissal Order.**

Sumpter also appeals the orders denying his motions to reconsider the Claim Order and the Dismissal Order. Although Sumpter included these orders in his notice of appeal, he failed to assert them as issues on appeal or provide any argument as to

how the bankruptcy court abused its discretion in denying them. He also failed to include copies of any of his motions in the record for our review. Therefore, we conclude that Sumpter has abandoned his appeal of these issues. See Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (9th Cir. 1999)(an issue not adequately addressed by appellant in his opening or reply brief is deemed abandoned).

**C.   Nicholas's motion for sanctions under Rule 8020.**

Finally, we consider Nicholas's motion for sanctions against Studer and Sumpter for attorney's fees and double costs. In her motion, Nicholas contends that Sumpter's appeals are frivolous, brought in bad faith, and are wholly without merit. Sumpter has, contends Nicholas, attempted to delay distribution through extensive, duplicative and frivolous litigation in multiple courts so he might remain in possession of the Property. In addition to his bankruptcy court losses, Nicholas notes that Sumpter has lost every action at the state court level, has filed two state court writs that were denied, has been denied injunctive relief by a federal district court, and his appeals to the California Court of Appeal were dismissed as being frivolous and untimely. Nicholas asserts that Sumpter's apparent refusal to accept these adverse rulings, and his repeated attempts to re-litigate them in multiple forums, is unreasonable and unjustifiable and entitles her to the attorney's fees and costs she incurred having to defend these frivolous appeals.

Rule 8020 provides that the Panel may award "just damages and single or double costs" to an appellee if an appeal is frivolous. An appeal is frivolous where the result is obvious or

the appellant's arguments are wholly without merit. First Fed. Bank of Cal. v. Weinstein (In re Weinstein), 227 B.R. 284, 297 (9th Cir. BAP 1998). Considering Nicholas's motion and Sumpter's opposition, and our review of the record, we conclude that Nicholas is entitled to sanctions under Rule 8020. Sumpter's appeals are frivolous and are wholly without merit. See Maloni v. Fairway Wholesale Corp. (In re Maloni), 282 B.R. 727, 734 (1st Cir. BAP 2002)(a finding of bad faith is generally not required to impose sanctions under Rule 8020; generally sanctions will be imposed regardless of the appellant's motive because the rule seeks to compensate an appellee who has had to waste time defending a meritless appeal); see also 10 COLLIER ON BANKRUPTCY ¶ 8020.06 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010). Sumpter's arguments are unclear, not logical, are not supported by specific references to the record, and are completely groundless. He also failed to provide an accurate or complete description of the facts, which distorts the record. His appendix is disorganized and incomplete. See Maloni, 282 B.R. at 734 (when issuing sanctions, Panel may consider whether appellant's arguments effectively address the issues on appeal, fail to cite any authority, cite inapplicable authority, make unsubstantiated factual assertions, assert bare legal conclusions, or misrepresent the record). Notably, Sumpter dedicated twice the effort in his opposition to the sanctions motion that he expended in his opening appellate brief. His amended opening brief is eight pages; his opposition to the motion is sixteen. Furthermore, the bankruptcy court has admonished Studer for filing multiple motions for reconsideration

- 27 -

of the same orders. Studer has gone beyond zealous advocacy for his client, and the endless and frivolous litigation against Nicholas needs to stop.[17]

Who is responsible for the sanctionable conduct? In considering this question, <u>Romala v. United States</u>, 927 F.3d 1219, 1225 (Fed. Cir. 1991), is instructive.

> Frivolity in argument is no doubt attributable at least as much to tactical decisions made by an attorney in writing briefs as to the overall appellate strategy to which the client may specifically consent. . . . At the same time, it is well settled that a client is bound by the acts or omissions of his or her lawyer[.] . . . Where the frivolity in an appeal lies not in the filing of the appeal, but in the type of argument employed in support of it, it is appropriate to hold not only the appellant but also [his] attorney responsible for this conduct.

In reviewing the record and the arguments presented by Nicholas in the motion for sanctions and the opposition filed by Sumpter, through his attorney, Studer, we conclude Sumpter and Studer are jointly and severally liable for the payment of the sanction we impose.

**VI. CONCLUSION**

For the reasons stated above, we AFFIRM the bankruptcy court's orders dismissing Sumpter's FAC and overruling his claim objection. We further GRANT Nicholas's motion for sanctions and award Nicholas $21,280 — the amount of attorney's fees she incurred defending this appeal — and single costs, jointly and severally against Sumpter and Studer.

---

[17] In California, attorneys are specifically prohibited under Rule 3-200 of the Rules of Professional Conduct from seeking, accepting, or continuing employment to prosecute frivolous claims.